**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL RUBIN, on Behalf of Himself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>VALIDUS HOLDINGS, LTD., EDWARD J. NOONAN, MAHMOUD ABDALLAH, MICHAEL E.A. CARPENTER, MATTHEW J. GRAYSON, JEFFREY W. GREENBERG, JOHN J. HENDRICKSON, JEAN-MARIE NESSI, MANDAKINI PURI, GAIL M. ROSS, THERESE M. VAUGHAN, CHRISTOPHER E. WATSON and KARIN HIRTLER-GARVEY,<br><br>    Defendants. | Case No.<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Michael Rubin ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Class Action Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1.  This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Validus Holdings, Ltd. ("Validus" or the "Company") against Validus and the members of Validus' Board of Directors (the "Board" or the "Individual Defendants," and together with Validus, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and

U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Validus will be acquired by American International Group, Inc. ("AIG"), through its wholly-owned subsidiary Venus Holdings Limited ("Merger Sub") (the "Proposed Transaction").

2.      On January 22, 2018, Validus and AIG issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated January 22, 2018 (the "Merger Agreement") to sell Validus to AIG for $68.00 per share in cash (the "Merger Consideration"). Pursuant to the Merger Agreement, Merger Sub will merge with and into the Company, with the Company surviving the merger as a wholly-owned subsidiary of AIG.  The Proposed Transaction is valued at approximately $5.56 billion.

3.      On March 7, 2017, Validus filed a Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Validus stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things:  (i) Validus insiders' potential conflicts of interest; (ii) Validus' financial projections prepared by Validus' management and provided to and utilized by J.P. Morgan Securities LLC ("J.P. Morgan") in connection with its evaluation of the Proposed Transaction; and (iii) the valuation analyses prepared by J.P. Morgan in connection with the rendering of its fairness opinion.  The failure to adequately disclose such material information constitutes a violation of the above-referenced sections of the Exchange Act, as Validus stockholders need such information to cast a fully-informed vote or make an appraisal decision in connection with the Proposed Transaction.

4.      In short, unless remedied, Validus' public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material

information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's Western World Insurance Group, Inc.is headquartered in this District; (ii) one or more of the Defendants either resides in or maintains executive offices in this District; and (iii) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Validus.

9.      Defendant Validus is a Bermuda corporation with its principal executive offices located at 29 Richmond Road, Pembroke HM08, Bermuda.  Validus provides reinsurance coverage, insurance coverage, and insurance linked securities management services worldwide.

The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "VR."

10.    Defendant Edward J. Noonan ("Noonan") has been Chief Executive Officer ("CEO") and Chairman of the Board since the Company's formation in October 2005.

11.    Defendant Mahmoud Abdallah ("Abdallah") has been a director of the Company since May 2012.

12.    Defendant Michael E.A. Carpenter ("Carpenter") has been a director of the Company since August 2011.

13.    Defendant Matthew J. Grayson ("Grayson") has been a director of the Company since its formation in October 2005.

14.    Defendant Jeffrey W. Greenberg ("Greenberg") has been a director of the Company since its formation in October 2005.

15.    Defendant John J. Hendrickson ("Hendrickson") has been a director of the Company since its formation in October 2005 and the Company's Director of Strategy since February 2013.

16.    Defendant Jean-Marie Nessi ("Nessi") has been a director of the Company since its formation in October 2005.

17.    Defendant Mandakini Puri ("Puri") has been a director of the Company since its formation in October 2005.

18.    Defendant Gail M. Ross ("Ross") has been a director of the Company since May 2016.

19.    Defendant Therese M. Vaughan ("Vaughan") has been a director of the Company since May 2013.

20.    Defendant Christopher E. Watson ("Watson") has been a director of the Company since its formation in October 2005.

21.    Defendant Karin Hirtler-Garvey ("Hirtler-Garvey") has been a director of the Company since August 2017.

22.    Defendants Noonan, Abdallah, Carpenter, Grayson, Greenberg, Hendrickson, Nessi, Puri, Ross, Vaughan, Watson, and Hirtler-Garvey are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Validus, "Defendants."

### OTHER RELEVANT ENTITIES

23.    AIG is a Delaware corporation with its principal executive offices located at 175 Water Street, New York, New York 10038.  AIG is a leading global insurance organization. AIG's common stock is traded on the New York Stock Exchange under the ticker symbol "AIG."

24.    Merger Sub is a Bermuda exempted company and a wholly owned subsidiary of AIG.

### CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Validus common stock (the "Class").  Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26.    Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

27.    The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained

through discovery, Plaintiff believes that there are thousands of members in the Class. As of February 26, 2018, there were approximately 81,393,809 shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by Validus or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

28.    Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)    Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)    Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

29.    Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

30.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

31.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Company Background and Strong Financial Outlook**

32.     Validus is a leading global provider of reinsurance, insurance, and asset management services.  It delivers its solutions through four operating companies: (1) Validus Reinsurance, Ltd., a global reinsurance group focused primarily on treaty reinsurance; (2) Talbot Underwriting Ltd., a specialty (re)insurance group operating within the Lloyd's market through Syndicate 1183; (3) Western World Insurance Group, Inc., a U.S. specialty lines organization; and (4) AlphaCat Managers, Ltd., a Bermuda-based investment advisor managing capital for third parties and Validus through insurance-linked securities and other property catastrophe and specialty reinsurance investments.

33.     On July 27, 2017, the Company issued a press release announcing its second quarter 2017 financial results, including net income available to Validus common shareholders of $101.1 million, or $1.25 per diluted common share, compared to $95.0 million, or $1.14 per diluted common share, for the second quarter of 2016.  The Company also reported net operating income available to Validus common shareholders of $88.5 million, or $1.09 per diluted common share, compared to $57.9 million, or $0.69 per diluted common share, for the second quarter of 2016.  Book value per common share at June 30, 2017 was $47.93, compared to $47.54 at March 31, 2017.

34.     Commenting on the results, Defendant Noonan stated:

I'm very pleased to report another very solid quarter for Validus. Despite soft trading conditions across the global market and elevated industry event frequency we were able to deliver an 82.5% combined ratio in the quarter and grew our book value per diluted share including dividends by 2.1%. We continue to position the Company well to weather the soft market while building the foundation to benefit from better market conditions down the road.

35.    On October 27, 2017, the Company issued a press release announcing its third quarter 2017 financial results.  Following hurricanes Harvey, Irma and Maria as well as the Mexico City earthquake, the Company reported a net loss attributable to Validus common shareholders of $250 million, or $3.17 per diluted common share, and a net operating loss attributable to Validus common shareholders of $254 million or $3.22 per diluted common share.

36.    During the October 27, 2017 earnings call, Defendant Noonan commented on the impact of the hurricanes, remarking:

> Catastrophe risk is a key part of our business.  In fact, we're one of the largest catastrophe reinsurers in the world.  From a geophysical perspective, we should expect three hurricanes such as occurred in this quarter about once in every 84 years.  Despite our leading position in the market, our loss was well below that level.

Defendant Noonan further stated:

> Obviously, our goal is to outperform our peers.  This manifests itself in top quartile ROEs on a consistent basis.  But I think there is a belief that these results arise from Validus being more heavily cat exposed tha[n] its peers.  This quarter should put that to rest.

> Risk disclosure[s] vary meaningfully – between companies, and we try to be the most transparent of our peer group. . . .  When we look at our losses this quarter in relation to our disclosed [probably maximum losses] and compare them with our peers, we have outperformed every single company by a wide margin.

In addition, Validus' Chief Financial Officer Jeffrey Sangster stated: "the quarter was characterized by significant catastrophe events. Despite the hurricane and earthquake losses, we closed the quarter with a very strong balance sheet and believe that we are well positioned to capitalize on opportunities that arise as a result."

**The Sale Process**

37.    On November 15, 2017, Brian Duperreault ("Duperreault"), AIG's Chairman and CEO, met with Defendant Noonan to discuss a potential transaction between AIG and Validus.

Duperreault indicated that AIG was interested in acquiring the Company at a price of $60.00 per share.

38.     On November 21, 2017, Duperreault emailed a letter to Defendant Noonan which included an indication of interest to acquire Validus for a price in the range of $65.00 to $68.00 per share in cash.

39.     Throughout December 2018, the parties held discussions and conducted due diligence.

40.     On January 3, 2018, Duperreault proposed a transaction at a price of $68.00 per share in cash and agreed to support payment of a dividend for the second quarter of 2018 in an amount up to $0.38 per share in the event the proposed transaction were to close prior to the customary record date for such dividend.

41.     Over the next few weeks, the parties and their advisors continued to negotiate the terms of a transaction and merger agreement.

42.     On January 17, 2018, representatives of AIG contacted one of Validus' senior officers to discuss AIG's desire for such officer to agree to an ongoing employment arrangement with AIG in advance of the announcement of a transaction.  The Proxy Statement fails to disclose which one of Validus' senior officers AIG contacted.

43.     At a January 21, 2018 Board meeting, J.P. Morgan rendered its fairness opinion and the Board approved the Merger Agreement.  Later that day, Validus and AIG executed the Merger Agreement.

**The Proposed Transaction**

44.     On January 22, 2018, Validus and AIG issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

NEW YORK & PEMBROKE, Bermuda -- Leading global insurer American International Group, Inc. (NYSE: AIG) today announced it has entered into a definitive agreement to acquire all outstanding common shares of Validus Holdings, Ltd. ("Validus," NYSE: VR), a leading provider of reinsurance, primary insurance, and asset management services. The transaction enhances AIG's General Insurance business, adding a leading reinsurance platform, an insurance-linked securities asset manager, a meaningful presence at Lloyd's and complementary capabilities in the U.S. crop and excess and surplus (E&S) markets. Holders of Validus common shares will receive cash consideration of $68.00 per share, for an aggregate transaction value of $5.56 billion, funded by cash on hand.

"Validus is an excellent strategic fit for AIG, bringing new businesses and capabilities to our General Insurance operation, expanding the bench of our management team and deepening our underwriting expertise," said Brian Duperreault, President and Chief Executive Officer of AIG. "With our global scale and the strength of our balance sheet, I am confident that Validus will thrive within AIG and strengthen our ability to deliver profitable growth for our shareholders as we strategically position AIG for the future."

Ed Noonan, Validus' Chairman and Chief Executive Officer, said, "We believe this transaction offers compelling value for our shareholders and reflects the strength of the business we've built together with our talented global team. Joining AIG and becoming part of a larger, more diversified organization immediately opens new opportunities for our people and our franchise. Validus will be able to serve clients and brokers in new and exciting ways, which will enhance our ability to grow profitably."

Peter Zaffino, AIG's Chief Executive Officer, General Insurance, said, "I have worked with and admired Validus since its formation and have the utmost respect for what the management team has achieved. They have built a business that is highly compatible with AIG's General Insurance business. Brokers and customers of both companies will benefit from this acquisition, and I look forward to all that we will be able to accomplish by bringing Validus into AIG."

**Strategic Rationale**

The acquisition of Validus represents a significant step forward in AIG's strategy to deliver profitable growth. The acquisition brings a diverse and complementary set of attractive franchises across specialized products and regions:

- Validus Re, a leading treaty reinsurer with a focus on property catastrophe, marine and specialty, brings deep relationships with brokers and clients and will benefit from being part of a more diversified business, along with the additional size and strength of AIG's balance sheet.

- AlphaCat, which manages $3.2 billion on behalf of clients by investing in insurance-linked securities products, will leverage the underwriting expertise within Validus Re and provide greater risk management flexibility.
- Talbot, a Lloyd's of London syndicate focused on short-tail specialty lines, will broaden AIG's technical underwriting expertise and provide access to distribution in the largest specialty insurance market in the world. Talbot's brokers and clients will benefit from the complete suite of capabilities that has made AIG a global leader, along with access to solutions both within and outside of the Lloyd's market.
- Western World, a U.S. specialty property and casualty underwriter focused on the small commercial E&S and admitted markets, will add technical expertise in binding authority. In addition, AIG gains Crop Risk Services, which provides access to the North American crop insurance market.
  Validus also adds to AIG's talent and underwriting capabilities with the addition of well-respected management and underwriting teams with a consistent record of strong underwriting results.

**Compelling Financial Benefits for AIG and Validus**

The transaction is expected to be immediately accretive to AIG's earnings per share and return on equity (ROE). Validus brings complementary, market-leading capabilities to AIG, enhancing AIG's platform and long-term growth opportunities for both companies. The diversification benefits of the transaction also provide significant additional capital efficiencies over time.

**Insiders' Interests in the Proposed Transaction**

45.    AIG and Validus insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Validus.

46.    Validus insiders stand to reap substantial financial benefits for securing the deal with AIG.  Under the terms of the Merger Agreement, a pro rata portion of each Company restricted share award, performance share award, and restricted stock unit award will be canceled and converted into the right to receive cash payments.  The following table summarizes the cash payments the Company's executive officers stand to receive in connection with their equity awards upon consummation of the Proposed Transaction:

| Name | Restricted Share Awards | Performance Share Awards |
|------|-------------------------|--------------------------|

| | Number (#) | Value ($) | Number (1) (#) | Value ($) |
|---|---|---|---|---|
| **Named Executive Officers** | | | | |
| Edward J. Noonan | 82,624 | $ 5,618,432 | 78,437 | $ 5,333,716 |
| Jeffrey D. Sangster | 52,984 | $ 3,602,912 | 51,140 | $ 3,477,520 |
| Kean D. Driscoll | 62,281 | $ 4,235,108 | 77,203 | $ 5,249,804 |
| Peter A. Bilsby | 51,463 | $ 3,499,484 | 47,259 | $ 3,213,612 |
| Robert F. Kuzloski | 54,001 | $ 3,672,068 | 29,397 | $ 1,998,996 |
| **7 Other Executive Officers** (2) | 249,984 (3) | $ 16,998,912 | 147,193 | $ 10,009,124 |

(1) The number of Validus performance share awards shown in this column is based on the assumption that the applicable performance-based vesting requirements are achieved as described above and total cash payments in respect of performance share awards with a performance period in progress are made at maximum payout levels (i.e., 175% of the target number of Validus performance share awards).

(2) Includes John J. Hendrickson, Patrick Boisvert, Andrew E. Kudera, Michael R. Moore, Jonathan P. Ritz, Romel Salam and Lixin Zeng.

(3) Includes 39,580 Validus restricted stock unit awards held by Mr. Boisvert.

47.    Moreover, if they are terminated in connection with the Proposed Transaction, Validus' named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($) (1) | Equity ($) (2) | Perquisites/ Benefits ($) (3) | Total ($) (4) |
|---|---|---|---|---|
| Edward J. Noonan | $ 5,698,240 | $ 10,952,148 | $ 47,863 | $ 16,698,251 |
| Jeffrey D. Sangster | $ 3,458,973 | $ 7,080,432 | $ 70,416 | $ 10,609,821 |
| Kean D. Driscoll | $ 3,543,400 | $ 9,484,912 | $ 69,943 | $ 13,098,255 |
| Peter A. Bilsby | $ 3,172,910 | $ 6,713,096 | $ 20,763 | $ 9,906,769 |
| Robert F. Kuzloski | $ 3,243,404 | $ 5,671,064 | $ 55,496 | $ 8,969,964 |

## The Proxy Statement Contains Material Misstatements or Omissions

48.    The Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Validus' stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek to exercise their appraisal rights.

49.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Validus insiders' potential conflicts of interest; (ii) Validus' financial projections prepared by Validus' management and provided to and utilized by J.P. Morgan in connection with its evaluation of the Proposed Transaction; and (iii) the valuation analyses prepared by J.P. Morgan in connection with the rendering of its fairness opinion.    Accordingly, Validus stockholders are being asked to vote for the Proposed Transaction or exercise their appraisal rights without all material information at their disposal.

***Material Omissions Concerning Validus Insiders' Potential Conflicts of Interest***

50.    The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Validus senior management and the Board.

51.    The Proxy Statement sets forth that:

On January 17, 2018, representatives of AIG contacted one of Validus' senior officers to discuss AIG's desire for such officer to agree to terms of an ongoing employment arrangement with AIG in advance of the announcement of a transaction. Mr. Noonan discussed the request with Peter Zaffino, AIG's General Insurance CEO, and Mr. Duperreault and it was agreed that any employment discussions with Validus employees should be delayed and should not interfere with the parties finalization and announcement of a transaction.

Proxy Statement at 25.  However, the Proxy Statement fails to identify the Validus senior officer contacted by AIG.

52.    Additionally, the Proxy Statement sets forth that:

Certain executive officers and non-employee directors of Validus may become officers or non-employee directors of AIG or otherwise be retained to provide services to AIG following the closing of the merger. Any executive officers of Validus who become officers or employees of AIG or who otherwise are retained to provide services to AIG following the closing of the merger may, prior to the closing of the merger, enter into new individualized compensation arrangements with AIG and may participate in cash or equity incentive or other benefit plans maintained by AIG following the closing of the merger. Subsequent to Validus entering into the merger agreement, certain executive officers of Validus began

> discussions with AIG with respect to potential post-closing arrangements,
> including employment, retention and incentive arrangements, but as of the date of
> this proxy statement, no new individualized compensation arrangements have
> been entered into between AIG or Validus and any executive officers of Validus.

Proxy Statement at 41. The Proxy Statement, however, fails to set forth all of the employment related discussions and negotiations that occurred between AIG and Validus' executive officers. The Proxy Statement further fails to disclose whether any of AIG's proposals or indications of interest mentioned management retention or the potential for Board members to sit on the combined company's board of directors.

53.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

54.     The omission of this information renders the statements in the "Background of the Merger" and "Compensation Arrangements with AIG" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Validus' Financial Projections***

55.     The Proxy Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

56.     First, the Proxy Statement omits material information regarding Validus' management's financial projections and the financial analyses performed by the Company's financial advisor J.P. Morgan based on these projections.

57.     For example, the Proxy Statement states that "J.P. Morgan conducted a dividend discount analysis to determine a range of equity values for Validus' fully diluted common shares,

assuming Validus continued to operate as a stand-alone entity.  The range was determined by adding the present value of an estimated future dividend stream for Validus over a ten-year period from 2018 through 2027, using financial projections for Validus prepared by Validus' management for the years 2018 — 2027, and the present value of an estimated terminal value of the common shares at the end of 2028."  The Proxy Statement fails, however, to disclose the Company's estimated future dividend stream for Validus over a ten-year period from 2018 through 2027.

58.    The omission of this information renders the statements in the "Certain Validus Prospective Financial Information" and "Opinion of Validus' Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning J.P. Morgan's Financial Analyses***

59.    The Proxy Statement describes J.P. Morgan's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Validus' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek to exercise their appraisal rights.  This omitted information, if disclosed, would significantly alter the total mix of information available to Validus' stockholders.

60.    With respect to J.P. Morgan's *Public Trading Multiples* analysis that was presented to the Board, the Proxy Statement fails to disclose the individual multiples for each of the selected public companies analyzed by J.P. Morgan, as well as the financial performance metrics for each selected company.

61.    Similarly, J.P. Morgan performed a *Selected Transaction Analysis* that was presented to the Board, yet the Proxy Statement fails to disclose the individual multiples for each of the selected transactions analyzed by J.P. Morgan, as well as any benchmarking analyses J.P. Morgan performed for Validus in relation to the target companies.

62.    Finally, with respect to J.P. Morgan's *Dividend Discount Analysis*, the Proxy Statement fails to disclose (i) the Company's estimated future dividend stream for Validus over a ten-year period from 2018 through 2027; (ii) how J.P. Morgan derived the terminal value for the Company; (iii) quantification of the estimated terminal value of the common shares at the end of 2028; (iv) the inputs and quantification of the inputs used to derive the Company's cost of equity of 7.25% to 8.25%; and (v) the implied terminal multiples or perpetuity growth rates resulting from the analysis, as applicable.

63.    Without such undisclosed information, Validus stockholders cannot evaluate for themselves whether the financial analyses performed by J.P. Morgan were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which J.P. Morgan's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek to exercise their appraisal rights.

64.    The omission of this information renders the statements in the "Opinion of Validus' Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

65.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or exercise their appraisal rights and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

66.     Plaintiff repeats all previous allegations as if set forth in full.

67.     During the relevant period, Defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

68.     By virtue of their positions within the Company, the Defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the Defendants.  It misrepresented and/or omitted material facts, including material information about Company insiders' potential conflicts of interest, the financial analyses performed by the Company's financial advisors, and the actual intrinsic standalone value of the Company.  The Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

69.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek to exercise their appraisal rights.

70.    By reason of the foregoing, the Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

71.    Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure Defendants' misconduct is corrected.

<u>**COUNT II**</u>

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

72.    Plaintiff repeats all previous allegations as if set forth in full.

73.    The Individual Defendants acted as controlling persons of Validus within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Validus, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

74.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

75.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have

had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

76.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

77.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

78.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Validus' stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Validus, and against Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Validus stockholders;

C.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  March 20, 2018

By   *s/ Daniel Zemel*
_____
Daniel Zemel, Esq.
**ZEMEL LAW, LLC**
78 John Miller Way, Suite 430
Kearny, New Jersey 07032
T: (862) 227-3106
F: (973) 282-8603
DZ@zemellawllc.com

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
Alexandra E. Eisig
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
*Attorneys for Plaintiff*